IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:21cr6 (RBS) |
| | ) | |
| NATHAN DeALBERT MATTOCKS, | ) | |
| a.k.a. "D.", "Dee", "De-Blokk," | ) | |
| "D-Block," | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

Pursuant to the Court's Sentencing Procedures Order (ECF No. 129), the United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Assistant United States Attorney Brian J. Samuels, and Ken Kaplan, Special Assistant United States Attorney, hereby offers its position with respect to sentencing. This case arises from a Second Superseding Indictment charging defendant with nine drug trafficking and firearm-related offenses and five obstruction/witness tampering offenses. It also includes forfeiture. A jury convicted defendant of all but three drug trafficking offenses. Notably, the jury found defendant guilty of both the drug trafficking conspiracy (Count One) and a substantive drug trafficking offense involving fentanyl distribution (Count Six). These convictions drive the guideline and statutory sentences. As explained below, defendant's sentencing implicates the advisory sentencing guidelines, mandatory statutory sentence requirements, and the overarching edicts contained in section 3553.

In accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's order, the United States represents that it has reviewed the PSR and has no objections.

The defendant raised numerous fact objections that, if granted, would greatly reduce the advisory guideline penalties, including imprisonment range and fines.

As discussed below, the defendant's objections are either foreclosed by defendant's prior admissions, contrary to facts adduced at trial, or simply not credible against the information disclosed in the Probation Officer's report, which, under Fourth Circuit law, is deemed reliable and may be relied upon solely in determining defendant's sentence. Defendant, therefore, has not met his burden and the guideline range objections should be overruled. In short, the United States Probation Office properly calculated the advisory United States Sentencing Guidelines range – Offense Level 37/ Criminal History Category IV with a corresponding imprisonment range of 292-365 months. The statutory maximum caps defendant's sentence at 240 months per drug conviction.

The advisory guidelines account for only part of the defendant's sentence. The mandatory sentencing provisions in Section 924 provide a second sentencing layer arising from the jury verdicts on Counts Seven and Eight – both undergirded by separate drug trafficking crimes. On those counts, the Court is required to assess a mandatory 180-month consecutive sentence. Thus, if the statutory caps did not apply to the drug charges of conviction in Counts One, Four and Six, Mattocks would be facing significantly more jail time (292-365 months on the Guideline sentence alone) before the mandatory sentences under 924(c) (180 months).

Defendant has indicated he will argue against the Court imposing multiple, consecutive Section 924(c) sentences resulting in mandatory 180-month terms of incarceration. Defendant's arguments are contrary to binding Fourth Circuit law. The Fourth Circuit and district courts, including at least one in this Division, have held routinely that convictions on multiple counts of 924(c) offenses lead to mandatory, multiple, and consecutive sentencing. Therefore, defendant's

arguments devolve to requesting a sentence contrary to law and binding Circuit precedent. Accordingly, it should be rejected.

For the reasons to follow, as well as those to be more fully articulated at the sentencing hearing on January 6, 2023, the Government respectfully requests that the Court sentence the defendant to 292 months under the Guidelines and 180 months under section 924 for a total of 472 months' incarceration. This requested sentence accounts for the multiple drug trafficking convictions, the associated statutory cap that is at the bottom of the advisory Guideline range and ensures that mandatory sentences are imposed properly. The United States' requested sentence adheres to the unique factors of this defendant, this case, including the mandatory minimum sentences, 18 U.S.C. § 3553(a), and prudential Fourth Circuit case law. The recommended sentence results in a "sufficient, but not greater than necessary" sentence.

<u>INTRODUCTION</u>

Nathan DeAlbert Mattocks ("Mattocks") was born to the consensual relationship of Nathan Lee Wyatt and Jennifer Mattocks on March 15, 1984, in New York City. *See* ECF No. 138Presentence Investigation Report ("PSR") at Pt. C., ¶ 79, 81. Mattocks was raised in New York City until age ten when his mother relocated the family to Virginia to remove herself from an abusive relationship with Mattocks' father. *Id.* at ¶¶ 81. Mattocks knew his father dealt drugs, lied, manipulated and was abusive towards women. *Id.* at ¶ 82. Mattocks witnessed the abuse, including, at age eleven, seeing his father throw his mother out of a moving car. *Id.* His mother tried unsuccessfully to escape the abuse when she moved Mattocks to Virginia. *Id.* Mattocks' father, however, followed them. *Id.* [1] Mattocks has two half siblings on his father's side who reside in Virginia. *Id.* at ¶ 60. Mattocks was raised with an individual he refers to as his step-brother. *Id.*

---

[1] Mattocks' parents reside in Virginia and suffer major health issues. Mattocks' father, with whom he has limited contact, recently underwent surgery to remove a blood clot from his brain

Mattocks had a difficult childhood. He lacked a good male role model. At age 11, Mattocks claimed he discovered his mother was abusing "crack." *Id.* at ¶ 63. Mattocks took advantage of his mother's addiction and engaged in "defiant acts" because he knew that his mother was unable to correct him. *Id.* Though not entirely clear, Mattocks appears not to have regularly attended school in this timeframe. *See* PSR at ¶ 81 (reporting on high school attendance). Mattocks also began using drugs – marijuana – an event that would impact his life from then to now. *Id.*

Mattocks' first drug-related arrest occurred in 1999. He was 15 years old. PSR at Pt. B., ¶ 60.[2] Mattocks claims that he and friends "found" his mother's crack, stole it, and took it to a friend's house. PSR at Pt. C., ¶ 84. Mattocks relayed that soon after he and his friends arrived at his friend's house the police arrived, conducted a search of the residence, located the crack and arrested him. *Id.* Mattocks took responsibility for the drugs. *See* PSR at Pt. B., ¶ 60. Mattocks was adjudged delinquent, placed on probation, ordered to serve fifty hours of community service, and was sent to live with his aunt. *Id.* Mattocks explained that his aunt was "stern" and provided him a structured environment where he learned "accountab[ility]". *Id.* at ¶ 84. His aunt re-enrolled him in school, but it was short-lived. He got into a fight and was sent to Crossroads Boys Home in Williamsburg, VA. *Id.*

Mattocks was ordered to serve four months at Crossroads. In that time, he reunited with his mother and was released to her custody. *Id.* He lost the structured environment his aunt offered and, apparently, her lessons concerning accountability. At age 16, defendant was convicted of Petit Larceny and served fourteen months at Culpepper Detention Facility. Mattocks' turbulent

---

and Mattocks believes he has early signs of dementia. *See* PSR at ¶ 79. Mattocks reports that his mother has had three heart surgeries, was recently diagnosed with chronic obstructive pulmonary disease and uses an oxygen tank to assist her breathing. *Id.* at ¶ 79.

[2] Mattocks first encountered legal troubles in early 1999 at age 14 for possession of tobacco. PSR at Pt. B., ¶ 59.

formative years continued upon his return to society and re-matriculation in high school. Within a year, he was expelled for his involvement in a "physical altercation." PSR at Pt. C., ¶ 85. Mattocks left home because he refused to follow his mother's rules as she was working on her sobriety. Despite being on juvenile probation, Mattocks was out of school, living on his own, and continued to abuse marijuana. *Id.* at ¶¶ 85-86.

Mattocks suggests that he attained relative stability from ages 19-24 (*See* PSR at Pt. C., ¶ 86). His criminal history reflects otherwise. *See* PSR at Pt. B., ¶¶ 64-67 (detailing both arrests and convictions while Mattocks was in his early 20s). *See also* PSR at ¶ 86. He also had probation revoked for repeated drug use and failure to complete substance abuse counseling in September 2003 (age 19). *Id.* at ¶ 64. On the positive side, he attained his General Education Diploma (GED) in April 2004 (age 20). Mattocks undermined this success when he sustained his next drug-related conviction in 2006 – then age 22. He was sentenced to three years – all suspended – for possession of cocaine. *See* PSR at Pt. B., ¶ 65. Mattocks would not stay out of jail long. In 2008 (age 24), he was convicted of Attempted Robbery, Use of a Firearm in a Robbery, and Violent Felon in Possession of a Firearm. *See id.* at ¶ 67. He was sentenced to twenty years' incarceration with nineteen suspended, five years' incarceration consecutive, and three years' incarceration consecutive respectively. *See id.* In addition, the Commonwealth sentenced him to nine years' incarceration for his probation violation with all but three months suspended. *Id.* Mattocks served approximately eight years and was released to probation on May 4, 2016. *Id.* Mattocks avers that while incarcerated he was introduced to cocaine and would use it whenever it was available within the jail. *See* PSR at Pt. C., ¶ 87.[3]

---

[3] Mattocks' statement concerning his introduction to cocaine while imprisoned is inconsistent with his criminal history. In 2006, he was convicted of cocaine possession. *See* PSR at Pt. B., ¶ 65.

Mattocks' time outside jail routinely led to arrests and probation revocations – often attributable to drugs. Mattocks has never stopped his drug abuse or criminal cycle. The PSR, and his criminal history, makes this point clear. In May 2016, approximately six months after being released, Mattocks was arrested on a probation violation and incarcerated for a couple months until November 2017. Mattocks stayed out of trouble for approximately three months until February 2018, when he was arrested on a new probation violation. He spent a few more months in jail and was later arrested in April and July 2018 for probation violations. Upon those convictions, he was incarcerated until mid-December 2019. He also was convicted of petit larceny in Essex County, Virginia in July 2018. He received a sixty-day suspended sentence. *Id.* at ¶ 69. As detailed above, this arrest constituted a probation violation. Mattocks was released from jail in December 2019. Other than a conviction for driving on a revoked license (*Id.* at ¶ 70), in July 2020 for which he received no jail time, Mattocks remained out of jail until the instant offenses.

<u>OFFENSE CONDUCT</u>

As summarized in the PSR and revealed in the course of the trial, on August 5, 2020, emergency operators received a 9-1-1 call from an individual (hereinafter "Victim") reporting that there was a black male driving a grey Honda Civic, following him, and shooting at him. *See* PSR at Pt. A., ¶ 13. Victim also relayed that he observed a white individual sitting in the passenger seat. *Id.* Gloucester County Sheriff's Office ("GCSO") responded, located, and pulled over a grey Honda Civic. Officers encountered a white female driving and a black male in the passenger seat. These occupants were consistent with the 9-1-1 callers' reporting. *Id.* GCSO arrested both individuals. GCSO's initial search of the grey Honda Civic revealed a 9mm cartridge on the driver's side floorboard. *Id.* Officers searched Victim's vehicle and found 9mm bullets lodged in Victim's car driver's side backseat and trunk. *Id.*

Officers spoke with Witness "1" who also testified at trial. Witness "1" explained, consistent with her trial testimony, that Mattocks switched from driving to the passenger seat before they were pulled over. Witness "1" observed Mattocks shooting at Victim's vehicle. *Id.* at ¶ 13. Witness "1" advised officers that Mattocks had thrown the firearm used in the shooting and a pill bottle containing "Roxacet 30s" from the vehicle prior to officers pulling them over. *Id.* Witness "1" also directed officers to the vicinity where Mattocks threw the objects and explained that Mattocks had been selling the pills since approximately July 31, 2020. *Id.* at ¶ 13. Officers searched the area and found a black Taurus, Model PT111 Pro, 9mm semi-automatic pistol. *Id.* They also found a white pill bottle containing approximately 87 blue pills and (1) gram of suspected marijuana. *Id.* The investigation revealed that the bullets found in Victim's car came from the recovered Taurus firearm. Mattocks' hands were tested for gun residue. His right hand contained ten particles – the maximum result per testing protocols. At trial, both a forensics expert and firearms expert testified as to how this evidence linked Mattocks to the recovered firearm. Furthermore, the lab tested the blue pills found in the pill bottle – referred to as "Roxacet 30s." The lab report, which was entered into evidence at trial and testified to by an expert forensic chemist, confirmed that the pills contained Fentanyl, a Schedule II controlled substance. The "Roxacet 30s" recovered constituted a distributable quantity.

Officers spoke with Victim. He explained that he was arrested for drug trafficking in March 2020 and that law enforcement seized drugs and money. *Id.* at ¶ 13. Victim believed Mattocks was shooting at him based on the lost drugs and money. *Id.* Victim had no relationship with Mattocks other than one related to drugs.

Mattocks' August 2020 arrest led to a fuller investigation into his drug trafficking ties in and around the middle Peninsula region. Agents identified an April 2020 traffic stop where GCSO

personnel found narcotics attributable to Mattocks' drug trafficking activities in a separate vehicle belonging to AB. *Id.* at ¶ 11. AB testified at trial. Mattocks' arrest in April 2020 again began with a 9-1-1 call – that caller testified at trial concerning what they believed was a drug transaction and identifying Mattocks as one of the individuals who was transferring items to AB's trunk. During the traffic stop, investigators, who testified at trial and as shown the jury on their body-worn cameras, found a bag in the trunk of AB's car that contained Mattocks' personal items, including a bank card, digital scale, and three substances that appeared to be illegal narcotics. *Id.* The car Mattocks was driving when he was pulled over belonged to CA who was a passenger.  Witnesses, including AB and CA, who both testified at trial, stated the bag belonged to Mattocks. *Id.* At trial, AB and CA testified concerning the April 2020 drug seizure. They explained how the drugs in the bag found in AB's vehicle belonged to Mattocks, why, and when he placed them in AB's trunk. Mattocks was seeking to avoid detection after seeing law enforcement which led to a chase resulting in him being pulled over. The substances recovered from Mattocks' bag were tested and returned positive results for heroin, a Schedule I controlled substance, methamphetamine, a Schedule II controlled substance, and cocaine, a Schedule II controlled substance. *Id.* at ¶ 11. Forensic Chemists testified at trial concerning these results.[4]

The investigation continued and agents would learn that beginning in approximately January 2017 and through 2018, with the exception of periods where Mattocks was incarcerated,

---

[4] The United States acknowledges that the jury acquitted Mattocks of possessing with intent to distribute heroin and cocaine in April 2020. It also acquitted the defendant of possessing cocaine with intent to distribute in January 2020 (Count Two).  *See* Jury Verdict Form (ECF No. 127). The jury's verdict has no impact on sentencing. Moreover, it is well settled that acquitted conduct could be considered in determining a sentence. *E.g., United States v. Grubbs*, 585 F.3d 793, 798-99 (4th Cir. 2009) (citing *United States v. Watts*, 519 U.S. 148, 157 (1997) (acquitted conduct may be considered provided the conduct is proven by a preponderance of the evidence)). The Government is not suggesting the Court rely on acquitted conduct in this case, which has no bearing on the advisory Guideline or the mandatory statutory sentences under 924. However, the acquitted conduct, is informative as to the depths of Mattocks' drug dealing.

he and an unindicted co-conspirator ("UCC") traveled between Gloucester County, Virginia and Richmond, Virginia approximately four times per week to meet with a drug source of supply and obtain approximately three (3) ounces of heroin, and three (3) ounces of methamphetamine, Schedule I and II controlled substances, for distribution. *Id.* at ¶ 9. Additionally, agents learned from jail calls to an individual known originally as "Bird" and corroborated through the individual Mattocks contacted, KB who testified at trial, that, upon Mattocks' request, she supplied his customers with drugs while he was in jail for the instant offense. KB also testified concerning a prior drug trafficking relationship between her and Mattocks supporting why he trusted her to sell to his clients.

Neither Mattocks' drug dealing, nor his violence ended upon the locking of jail cell doors. Agents learned that Mattocks sought to obstruct justice, threaten witnesses, and retaliate against witnesses in an ill-conceived, and ultimately failed effort, to derail his prosecution. After reviewing discovery provided in this case revealing witnesses against him, Mattocks sought assistance from a former Gangster Disciples "Enforcer" to assault or kill witnesses against him. Unknown to Mattocks, this individual, who testified at trial, alerted law enforcement to Mattocks' conduct. Tellingly, one individual Mattocks sought to wipe out was the individual identified above as an unidentified co-conspirator who was integral to Mattocks' drug trafficking and whose information significantly increased Mattocks' potential term of imprisonment. *See* PSR at Pt. A., ¶ 9. The jury convicted Mattocks on all five counts related to witness tampering and obstruction of justice.

PROCEDURAL HISTORY/POSTURE

The Court is well steeped in the Procedural History and Posture of this case. For the sake of brevity, the United States incorporates as if fully set out herein, the Procedural History/Posture section of its original sentencing memorandum, which details the original and superseding

indictment and Mattocks' conduct prior to his first sentencing in November 2021. *See* ECF No. 48 at 7-8.

Following Mattocks withdrawing his guilty plea, firing his second lawyer, being appointed a third lawyer, and Mattocks engaging in letter briefing with the Court, in May 2022, a grand jury handed down the Second Superseding Indictment charging Mattocks with fourteen criminal offenses. ECF No. 82. *See also* PSR at Pt. A, ¶ 4. Count One charged a drug conspiracy to possess with intent to distribute Schedule I and II controlled substances between and among Mattocks and others known and unknown that began in or about January 2017 and continuously thereafter to on or about August 10, 2020. *Id.* Additionally, the grand jury charged Mattocks with substantive drug trafficking offenses in Counts Two through Six charging possession with intent to distribute cocaine (Count Two), heroin (Count Three), methamphetamine (Count Four), cocaine (Count Five), and Fentanyl (Count Six). *Id.* Further, Mattocks was charged with three firearm offenses – Possess, Carry, Use, Brandish and Discharge a Firearm in Relation To and in Furtherance of a Drug Trafficking Crime; to wit: Count One (Count Seven); Possess, Carry, Use, Brandish and Discharge a Firearm in Relation To and in Furtherance of a Drug Trafficking Crime; to wit: Count Six (Count Eight); and Felon in Possession of a Firearm (Count Nine). *Id.* Finally, in Counts Ten through Fourteen, Mattocks was charged with five crimes related to his attempts to thwart his prosecution – Counts Ten and Eleven charged Witness Tampering By Physical Force or Threat, Counts Twelve and Thirteen charged Retaliating Against Witnesses, and Count Fourteen charged Obstruction of Justice. *Id.*

This Court presided over a nearly ten-day jury trial, which ended in a jury verdict on July 21, 2022. Mattocks was found guilty of all but Counts Two, Three and Five – none of which are consequential to the sentencing in this case. ECF No. 127; ECF No. 129 (Judgment of Acquittal

on Counts. Two, Three and Five). *See also* PSR at Pt A, ¶ 5. The Court issued its Sentencing Procedures Order and originally set sentencing for November 29, 2022 but reset it for January 6, 2023. ECF No. 129.[5]

DISCUSSION

I.    Statutory Penalties

Counts One, Four, Six and Seven- Title 18, United States Code, Sections 841 and 846 provide that Mattocks may be imprisoned for up to 20 years, is subject to a fine of up to $1,000,000, and up to three years of supervised release per offense of conviction. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3583(b)(2).

Count Seven - Title 18, United States Code, Section 924(c)(1)(A)(iii) provides Mattocks shall serve a 10-year term of imprisonment consecutive to any other prison term imposed, is subject to a $250,000 fine, and up to five years of supervised release. *See* 18 U.S.C. §§ 924(c)(1)(A)(iii), 3571(b)(3), 3583(b)(1).

Count Eight – Title 18, United States Code, Section 924(c)(1)(A)(i) provides Mattocks shall be imprisoned for at least five years consecutive to any other prison term imposed, is subject to a $250,000 fine, and up to five years of supervised release. 18 U.S.C. §§ 924(c)(1)(A)(i), 3571(b)(3), 3583(b)(1).

Count Nine – Title 18, United States Code, Section 924(a)(2) provides that Mattocks may be imprisoned for up to 10 years, fined up to $250,000, and placed on a term of supervised release for up to three years. 18 U.S.C. §§ 924(a)(2), 3571(b)(3), 3583(b)(2).

---

[5] As the Court is aware, Mattocks engaged in a round of letter writing and briefing with the Court following the Jury Verdict. Most of these pleadings were struck and Mattocks eventually agreed to have his present counsel continue representing him. *See* ECF Nos. 131-133, 136-137; 142.

11

Counts Ten and Eleven – Title 18, United States Code, Section 1512(a)(3)(C) provides that Mattocks may be imprisoned for up to 20 years, fined up to $250,000, and placed on a term of supervised release of up to three years per count of conviction. *See* 18 U.S.C. §§ 1512(a)(3)(C), 3571(b)(3), 3583(b)(2).

Counts Twelve and Thirteen – Title 18, United States Code, Section 1513(b)(1) & (2) provides that Mattocks may be imprisoned for up to 20 years, fined up to $250,000, and placed on a term of supervised release of up to three years per count of conviction. *See* 18 U.S.C. §§ 1513(b)(1) &(2), 3571(b)(3), 3583(b)(2).

Count Fourteen – Title 18, United States Code, Section 1503 provides that Mattocks may be imprisoned for up to 10 years, fined up to $250,000, and placed on a term of supervised release for up to three years. *See* 18 U.S.C. §§ 1503(b)(3), 3571(b)(3), 3583(b)(2).

With the exception of imprisonment terms statutorily mandated as consecutive in Counts Six and Seven, the Court has discretion to run the sentences for each count of conviction consecutively. *See* 18 U.S.C. § 3584(a). In fashioning a sentence to comply with Title 18, United States Code, Section 3553, the Court similarly has discretion, except as to Counts Six and Seven, to run some sentences concurrently and others consecutively. *See e.g.,* 18 U.S.C. § 3584(b) and (c). The Court's authority and Mattocks' unique circumstances as an undaunted, habitual offender combined with his attempt to attack the criminal justice system, from which he sought his day in court after being allowed to withdraw a guilty plea, through physical harm, including death threats against witnesses, factors into the Government's approach to sentencing in this case.

II.       Legal Issues Related to Mattocks Sentencing

There are three legal issues, aside from the usual Guideline and Section 3553 issues, the Government has identified that may bear on Mattocks' sentence. First, Mattocks has objected

12

baldly to criminal conduct that raises his range of imprisonment. Second, Mattocks signed and agreed to a Statement of Facts admitting conduct when he pled guilty pursuant to a Plea Agreement warning him that such information could be used against him. Third, there are two mandatory sentences arising from separate criminal predicates detailed in Counts Seven and Eight that combined require the Court to sentence Mattocks to consecutive sentences totaling 180-months in jail.

### A.  The Court Should Overrule Mattocks' Drug Weight Objection.

On November 7, 2022, Mattocks lodged general objections to PSR paragraphs 9, 10, 14-17, 25, 37, 44, 50-52 (the Guideline calculation), 56, and 117. In essence, Mattocks challenges the sufficiency of the sentencing evidence to prove historical drug transactions. The objection should be overruled for the following reasons.  First, it is well established that defendant has the burden to show that information in the PSR is unreliable. *See United States v. Powell*, 650 F.3d 388, 394 (4th Cir. 2011). The Fourth Circuit counseled in *United States v. Terry* that "mere objection to the finding in the presentence report is not sufficient …" 916 F.2d 157, 160-62 (4th Cir. 1990) ("Without affirmatively showing the information is inaccurate, the court is free to adopt the [PSR] findings … without more specific inquiry or explanation."). *See also United States v. Love*, 134 F.3d 595, 606 *cert. denied* 524 U.S. 932 (1998). Here, defendant simply denies historical drug trafficking conduct, but provides no factual basis to support his denial. In a similar situation, the Fourth Circuit reaffirmed recently that a district court was well within its "province" to rely upon facts in the PSR without the Government calling a witness to support the defendant's historical drug trafficking conduct. *See United States v. Smith*, 827 F. App'x 262 (4th Cir. 2020) (unpublished) (finding statements from a confidential informant contained in the PSR are sufficiently reliable in determining sentence) (citing *Powell*).

Second, the trial evidence of Mattocks' conduct supports the reliability of the historical drug information. As the Court heard during trial, Mattocks had a pre-existing drug trafficking relationship with an individual revealed as SC who Mattocks learned through discovery was an unindicted co-conspirator who provided inculpatory information against Mattocks' penal interest. This led to Mattocks seeking help to eliminate this individual. *See* Government Trial Exh. 417 (Note from Mattocks to Gang Member). The note reflected that Mattocks wanted SC silenced. Testimony established Mattocks' reason was that SC's testimony was vital to the case against him. Other evidence revealed that Mattocks believed the individual referenced in PSR paragraph 9 was SC. Therefore, Mattocks seeking to kill or otherwise silence SC provides a second layer of reliability to the historical drug information detailed in the PSR.

A third leg of support, which the Court need not even reach, is that Mattocks admitted the historical drug trafficking conduct when he pled guilty and agreed to the Statement of Facts undergirding his guilty plea. *See* ECF No. 40.

## B. The Court May Rely on Information in Statement of Facts at Sentencing

As a consequence of Mattocks being permitted to withdraw his guilty plea, the Government could not use Mattocks' plea-related statements at trial except for impeachment purposes. ECF No. 70 at 10, n.7. However, at the sentencing phase the rules of evidence, such as Rule 410, which restricts the use of plea negotiations, do not apply. *See* Fed. R. Evid. 1101(d)(3). More importantly, the Plea Agreement provides that the Statement of Facts constitutes a stipulation concerning defendant's criminal conduct for purposes of determining the Sentencing Guidelines. *See* ECF No. 39 at ¶ 3. To be sure, the Court allowed Mattocks to withdraw his guilty plea, but that withdrawal does not undermine his admissions in open court concerning his criminal conduct, which carry a presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v.*

14

*Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)("In the absence of extraordinary circumstances … allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are **always palpably incredible and patently frivolous or false**") (emphasis added); *Fields v. Attorney Gen*., 956 F.2d 1290, 1299 (4th Cir.1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by his sworn statements"). Mattocks has not and cannot dispute his sworn admissions. Accordingly, the Court may also rely upon the statement of facts to which Mattocks agreed and subscribed to under oath before a federal judge.

### C.   Fourth Circuit Precedent Requites Consecutive Sentences on Multiple 924(c) Counts of Conviction

The jury convicted Mattocks of two separate 924(c) charges arising from two separate predicate drug offenses. *See* ECF No. 127 at 2 (Jury Verdict Form); *see also* ECF No. 82 (Second Superseding Indictment) (Count Seven referring to Drug Conspiracy in Count One) and (Count Eight referring to Possession with Intent to Distribute Fentanyl). Also, the jury specifically found as to Count Seven that Mattocks discharged the firearm. *See* ECF No. 127 at 2. Fourth Circuit law has long held that 924(c) convictions founded upon separate drug or crime of violence offenses lead to multiple, consecutive sentences. *See United States v. Khan*, 461 F.3d 477, 493 (4th Cir. 2011)(holding that mandatory 924(c) sentences violate neither equal protection nor due process)(citing *United States v. Luskin*, 926 F.3d 372, 376-77 (4th Cir. 1991)). The Fourth Circuit throughout the last 30 years has reaffirmed this precedent.

In a similar factual scenario to the matter at bar, the Fourth Circuit affirmed multiple 924(c) sentences predicated upon conspiracy to possess with intent to distribute drugs and possession with intent to distribute drugs holding the district court correctly found that such crimes are not duplicative for double jeopardy purposes. *See United States v. Jordan*, 952 F.3d 160, 170 (4th Cir.

2020) *cert. denied* 141 S. Ct. 1051 (2021) (internal citations omitted). *See also e.g., United States v. Harper*, No. 20-4335, 2021 WL 5789713 at * 2 (4th Cir. Dec. 7, 2021) (unpublished) (holding district court <u>required</u> to sentence defendant to two consecutive 924(c) sentence as a result of his guilt to both offenses); *Assaye v. United States*, No. 1:17-cv-1385(LMB), 2020 WL 2950361 (E.D. Va. June 3, 2020) (slip op.) (dismissing the 2255 petition and explaining that under Fourth Circuit law multiple 924(c) sentences are required); *United States v. Hasan*, Criminal No. 2:10cr56, 2011 WL 10620312, at * 6 (E.D. Va Mar. 9, 2011) (following binding precedent in *Khan* and imposing multiple 924(c) sentences). Accordingly, Fourth Circuit precedent requires that this Court impose multiple 924(c) sentences upon Mattocks consistent with the jury's verdict on Counts Seven and Eight, which are undergirded by Mattocks' separate drug trafficking crimes.

III.     <u>Sentencing Guidelines</u>

The United States acknowledges that the Guidelines are not binding. It is, by now, a truism that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable. *Rita v. United States*, 551 U.S. 338, 351 (2007). *See also Nelson v. United States*, 555 U.S. 350, 351-2 (2009). Nevertheless, Supreme Court and Fourth Circuit precedents counsel that the Guidelines remain a significant and pivotal component in the sentencing process. *E.g., Gall v. United States,* 552 U.S. 38, 49-50 (2007) (properly calculated Guideline range is the starting point); *United States v. Raby*, 575 F.3d 376, 380-381 (4th Cir. 2009) (internal citations omitted). The sentencing court, therefore, "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a) …." *Nelson*, 555 U.S. at 351.

Mattocks has long served the Gloucester County, Virginia area as a drug dealer and been involved in other destructive criminal activity. His August 5, 2020 arrest reflected a convergence

16

of his well-tread criminal behavior involving guns and drugs. The investigation into Mattocks' criminal background established a lifestyle centered on drug crimes and the routine presence of illegal firearms. To be sure, his addiction to drugs, in part, fueled his criminal behavior, but it provides no safe harbor for his recidivism. His criminal history score is a stark reminder Mattocks never got the message that his crimes would catch up to him eventually. That time has arrived.

After being granted the assistance of three veteran and very competent defense counsel, asserting his Sixth Amendment right to a jury trial that he sought to impair by threats of physical harm against witnesses, Mattocks now faces sentencing. The Government seeks a sentence within the correctly calculated advisory Guideline range. The Government's requested sentence accounts for the multiple drug trafficking convictions – each carrying a 240-month statutory cap but may be run consecutive at the Court's discretion. Thus, the Government respectfully asks for a 292-month sentence under the Guidelines for Mattocks' convictions on Counts One, Four and Six pursuant to factors in the PSR and Mattocks' unique qualities and characteristics. *Rita*, 551 U.S. at 344. In addition to the advisory Guideline sentence, the Court has a mandatory obligation to impose a consecutive 10-year sentence on Count Seven and then a consecutive five-year sentence on Count Eight. The resulting total imprisonment term is 292 months plus 180 months for a total of 472 months.

The substantial sentence accounts for Mattocks' long tenure as a gun-wielding drug dealer in Gloucester County who has shown zero appreciation for the law, his actions, or the criminal justice system. In seeking this strong message, the United States is telling Mattocks and society that if you engage in destructive drug dealing conduct involving fentanyl (a highly addictive drug and major killer in the United States), use firearms, and then seek to derail your prosecution through attempting to silence witnesses, you will be dealt with fairly but harshly. *See Berger v.*

*United States*, 295 U.S. 78, 88 (1935) (Sutherland, J)*. (*explaining the United States Attorney's duty is to strike hard but not "foul" blows).  The United States' requested sentence is consistent with that solemn duty and role and reflects a sentence that Mattocks' evil and dangerous conduct has earned.

    IV.    <u>Section 3553(a) Factors</u>

       Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(1), (2)(A)-(C). The Section 3553(a) factors support the Government's position that Mattocks has earned a 292-month sentence followed by the mandatory, consecutive 180-month sentence. *See* 18 U.S.C. § 924(c)(1)(A)(iii).

    A.  **<u>18 U.S.C. 3553(a)(1)</u>**

       *i.*  *N*ATURE OF THE *O*FFENSE

       Defendant's criminal acts are serious and favor sentencing Mattocks to substantial time in prison. He shot at an individual driving at a high speed on a main thoroughfare in Gloucester County, Virginia over a drug debt. In doing so he endangered not just his intended victim's life, but also Witness 1's life who initially refused to chase the victim, and repeatedly pleaded with Mattocks to let her out of the car while he continued his gun blasting rampage. Additionally, Mattocks endangered innumerable innocent Gloucester County residents whose entire sheriff's department was deployed to stop Mattocks. As for Mattocks' target, a search of his vehicle found a bullet was lodged in the back driver's side passenger seat of Victim's car. Luckily, neither the

Victim nor any passersby were struck. Mattocks' behavior reflects a pre-disposition towards dangerous, reckless and violent conduct.

Moreover, one cannot fully contemplate the number of lives shattered because he continued to deal deadly narcotics throughout the Tidewater region. Indeed, the Court has special insight to the effect Mattocks' drug dealing had on his customers and his selfish desire to keep them hooked for his financial benefit. Four witnesses, KB, CA, AB, and Witness 1 all were customers and purveyors of Mattocks' poisons who, once they were away from Mattocks' drug supply were able to get clean and turn their lives around. The Court had a front row seat to body-worn cameras and each witness enabling it to see the remarkable difference between CA's, AB's and Witness 1's appearance while hooked on drugs Mattocks sold and since they no longer were buying his drugs. The drastic changes – especially with CA who is now not only clean but counseling other users as they too beat their addictions – drives home the damage Mattocks caused. His words show his callousness – in a jail call, which the Court heard at trial, Mattocks is heard telling witness KB that he wanted her to make sure his clientele remained hooked so that when he was released from jail he could resume his drug trafficking. Between his shooting at Victim in this case and the large number of drug sales, it's a miracle that no one has been killed by Mattocks' conduct. His continued drug trafficking and related conduct after prior jail sentences reflects that Mattocks has never rehabilitated and that his instant criminal conduct warrants a more stringent sentence. Finally, the defendant's actions in trying to dismantle the case against him by violent reprisals against witnesses are further revealing of his lack of regard for the law, society and evince his dangerousness.

## ii.   HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Defendant grew up amid the strain of an abusive father and a drug addicted mother. *See* PSR at Pt. C., ¶¶ 79, 81-83. He left New York at age ten and lost close relationships with family. *Id.* at ¶ 81. Mattocks lacked a positive male influence. He witnessed his father throwing his mother out of a moving car. *Id.* at ¶ 82. At age eleven, Mattocks discovered his mother's "crack" addiction and was introduced to marijuana and alcohol. *Id.* at ¶ 83. His introduction to drugs changed his life – it was a struggle that defendant continues to endure. Defendant's criminal troubles began in his early teens. This meant that he was in and out of middle school, sent to reform school, and ultimately expelled from high school. *Id.* at ¶¶ 84-85. Not fully educated, addicted to drugs, and lacking gainful employment, Mattocks turned to thievery and drug trafficking. *See* PSR at Pt. B., ¶¶ 64, 65, 67, & 69 (detailing larceny criminal history).

Mattocks advised that his "overall general health is good." PSR at Pt. C., ¶ 93. Mattocks is able-bodied has training in roofing, siding, carpentry and construction, but has never consistently held a job other than trafficking drugs. *See e.g., id.* at ¶¶ 105-112. Defendant's biggest challenge, which he admits, comes from his drug abuse. Mattocks used marijuana daily for approximately 26 years. *Id.* at ¶97-98. He graduated to cocaine in his twenties and used it daily until his arrest on August 5, 2020, which, according to the PSR, was the last day he used cocaine. *Id.* at ¶ 98.

The United States does not discount the affect drug addiction has had on Mattocks' life choices and criminal conduct. But, that only tells part of the story. His record shows that Mattocks was given opportunities time and again in the Commonwealth's criminal justice system – not just to reform, but to address his addiction. Mattocks' 2002 sentence – now 20 years ago – for Breaking and Entering With Intent to Commit a Felony (again shows no respect for society or the law) included a drug counseling program. Mattocks would squander the chance and have his probation

revoked, in part, because he failed to complete his ordered substance abuse counseling. *See* PSR Pt. B, at ¶ 64, p. 14. For Mattocks now to suggest that his circumstances arose because he is a drug addict ignores that he was given chances to reverse course but chose not to. The system did not fail Mattocks. To the contrary, Mattocks thumbed his nose at the chance to get clean and now cannot use that addiction as some defense to his serious and violent criminal behavior.

### A.  <u>18 U.S.C. § 3553(a)(2)</u>

Mattocks' offenses and applicable law calls for considerable and just punishment. The Government's position places significant consideration on what constitutes "just punishment." The sentence must account for Mattocks' predisposition to dangerous behavior. He had used cocaine the morning of the offense conduct, was driving a vehicle on a main thoroughfare and simultaneously shooting at Victim. This conduct alone is sufficient to hand down a lengthy prison term. However, when you combine that with his ongoing and nearly uninterrupted – except for intervening prison sentences – drug trafficking including setting up a transaction in and around August 10, 2020, despite being incarcerated in an effort to keep his drug clients hooked on his poisonous products, there is little room to show Mattocks leniency. As the jury heard from witness KB, even while in jail for the instant offense, Mattocks used drug contacts on the outside to continue pushing drugs to his clientele. A substantial sentence, with a recommendation for residential drug treatment, is required to protect the public and promote Mattocks' rehabilitation and respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A-D).

Mattocks is 38 years old and has accumulated nine criminal history points, which places him in Category IV. *See* PSR at Pt. B, ¶¶ 51-53. This score and the listed offenses reflect a lifetime filled with crime and recidivist conduct – his criminal history score underrepresents that his life on the outside amounts to short bridges between jail sentences. He has never gotten the message

that his criminal lifestyle will only result in his incarceration. Accordingly, the Government is focused on crafting a sentence that protects the public from future crimes he may commit. 18 U.S.C. § 3553(a)(2)(C).

In this matter, the Government places significant weight on the need for Mattocks' sentence to promote respect for the law and afford adequate deterrence—both to the defendant and to others similarly situated. 18 U.S.C. § 3553(a)(2)(B). Mattocks' conduct was far from a single victim crime. His longtime drug dealing affected numerous individuals and families across the middle Peninsula – a few of whom testified in Court about their dealings with Mattocks and how his drug pushing affected their families and loved ones. Moreover, Mattocks' drug trafficking routinely involved firearm possession. This too was the subject of testimony. His conviction includes three firearm offenses – two involving drug trafficking and one involving a shooting over a drug debt. The mixture of guns and drugs is a deadly recipe. It nearly was in this case had it not been for a seat cushion taking the bullet rather than the Victim.

Without underestimating the seriousness of these crimes, the United States points the Court to what may be Mattocks' most heinous and serious crimes. The witness tampering, retaliation, and obstruction charges targeted conduct that Mattocks not only intended to silence witnesses, which itself is bad enough, but to interfere with our justice system from which he sought the benefit of a jury trial after pleading guilty. And, the potential impact Mattocks sought to extract potentially affected not just in this case but any matter where the Government relies on cooperating witnesses. Therefore, the Government has placed particular emphasis on deterrence. As the Court knows, deterrence under Section 3553(a) is not limited to the necessary sentence to deter this defendant from engaging in further criminal conduct (specific deterrence), but also includes consideration of deterring other potential criminals from engaging in similar conduct

(general deterrence). *E.g.* 18 U.S.C. § 3553(a)(2)(B). *See United States v. Shoultz*, 340 F. App'x. 852, 854 (4th Cir. 2009) (citing with approval *United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008)). 18 U.S.C. § 3553(a)(2)(B).

The United States places equal focus on general and specific deterrence. Defendant's track record makes him a recidivism risk.  His dangerous and criminal conduct that puts others at risk. Mattocks and the public at large must understand that shooting at people on main roads over drug debts and selling drugs is harmful and dangerous to society. Not only has Mattocks put other citizens at risk, he put the justice system at risk with his attempts to kill witnesses against him. If society does not see defendant being justly punished, they too may decide to engage in a life of drug trafficking, gun crimes, and then attempt to derail the courts. A punishment that includes imposing a weighty jail sentence on Mattocks sends a strong message that when caught, the federal legal system will deal with you fairly, but harshly, under the law. Anything short of that message does not adequately address section 3553(a)'s specific or general deterrence requirements. Finally, the Government's sentencing position allows Mattocks an opportunity to work on his drug addiction that has unquestionably contributed to his long criminal reign. *See* 18 U.S.C. § 3553(a)(2)(D).

---

<u>CONCLUSION</u>

A sentence of incarceration within the correctly calculated Guideline range – 292-365 months plus the mandatory, consecutive 180 months of incarceration , is "sufficient but not greater than necessary" to address Mattocks' serious criminal conduct, would serve as a general deterrent, and gives him a chance to obtain skills for when he reenters society.  For the reasons stated above, the United States respectfully submits that such a sentence is appropriate in this case and would accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

JESSICA D. ABER
United States Attorney

By:    /s/                          
Kenneth P. Kaplan
Special Assistant United States Attorney
Brian J. Samuels
Assistant United States Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax:    (757) 591-0866
Email: kenneth.kaplan@usdoj.gov
       brian.samuels2@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of December 2022, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to the following:

> Shawn M. Cline
> 38 Wine Street
> Hampton, VA 23669
> scline@hamptonroadsdefense.com

I HEREBY CERTIFY that on this 29th day of December 2022, I sent a true and correct

copy of the foregoing to the following by electronic mail:

> Shannon E. Gerard
> United States Probation Officer
> 600 Granby Street, Suite 200
> Norfolk, Virginia 23606
> Tel. (757) 222-7300
> Email: shannon_gerard@vaep.uscourts.gov

> /s/ _____
> Kenneth P. Kaplan
> Special Assistant United States Attorney
> Attorney for the United States
> United States Attorney's Office
> Fountain Plaza Three, Suite 300
> 721 Lakefront Commons
> Newport News, VA  23606
> Phone: 757-591-4000
> Email: kenneth.kaplan@usdoj.gov